**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DUANE HUBBARD,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:03-0797** |
| **v.** | : | **(VANASKIE, C.J.)** |
| | | **(MANNION, M.J.)** |
| **PLEASANT VALLEY SCHOOL DISTRICT,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |

**REPORT AND RECOMMENDATION**

Pending before the court is the defendant's motion for summary judgment, (Doc. No. 13).


**I. PROCEDURAL BACKGROUND**

On April 9, 2003, the plaintiff commenced the instant action in the Court of Common Pleas of Monroe County, Pennsylvania, in which he alleges violations of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101, et seq., the Family Medical Leave Act of 1993, ("FMLA"), 29 U.S.C. § 2601, et seq., and the Pennsylvania Human Relations Act, ("PHRA"), 43 Pa.C.S. § 951, et seq. The plaintiff also sets forth a claim for retaliation under the aforementioned Acts. (Doc. No. 1, Ex. A).

On May 9, 2003, the defendant filed a notice of removal. (Doc. No. 1). An answer to the complaint was subsequently filed on May 14, 2003. (Doc. No. 2).

On January 30, 2004, the defendant filed the instant motion for summary judgment, (Doc. No. 13), along with a supporting brief, (Doc. No. 14), and a statement of material facts, (Doc. No. 15).  Supporting exhibits were filed by the defendant on February 3, 2004.  (Doc. No. 16).  The plaintiff filed a brief in opposition to the defendant's motion on March 3, 2004, (Doc. No. 20), with supporting exhibits filed on March 5, 2004, (Doc. No. 21).  A reply brief was filed by the defendant on March 15, 2004.  (Doc. No. 22).

## II.  FACTUAL BACKGROUND

The defendant has provided a statement of material facts[1], supported by various documentation, which establishes that the plaintiff was hired by the Pleasant Valley School District, ("District"), in September of 1978.  (Doc. No. 16, Ex. A, ¶ 5).

Prior to November 10, 2001, the plaintiff was a day shift custodian at the Eldred Elementary School.  (Doc. No. 16, Ex. B, p. 6).

On August 30, 2001, the District posted a vacancy for the newly created position of "Head Custodian" at the Polk and Eldred Elementary Schools.  (Doc. No. 16, Ex. C).

Prior to November 2001, there was no head custodian for Eldred, Polk

---

[1]Pursuant to Local Rule 56.1, the plaintiff has failed to file with the court a separate statement of material facts which responds to the defendant's statement of material facts.  Therefore, all facts set forth by the defendant are deemed admitted.

or Chestnuthill Elementary Schools.  (Doc. No. 16, Ex. B, p. 9).  The decision to create a head custodian position was recommended by Daniel Haney, Director of Facility Operations, and reviewed and approved by Anthony Fadule, Assistant Superintendent; Frank Pullo, Superintendent; and the Board of School Directors.  (Doc. No. 16, Ex. D).  Once this position was established, the plaintiff's position at Eldred was eliminated because the day shift custodial position was converted to the head custodian position.  (Doc. No. 16, Ex. E, p. 38).

The plaintiff did not apply for the position of head custodian.  (Doc. No. 16, Ex. B, p. 13).  Howard Scott, a custodian at the Middle School, was selected through the interview process for the position.  (Doc. No. 16, Ex. E, p. 38).  Once, Howard Scott was hired for the position, the only position available for the plaintiff was Howard Scott's position, which was third shift at the Middle School.  (Doc. No. 16, Ex. E, p. 38).

On November 7, 2001, the plaintiff's supervisors went to inform him that he would be transferred to another position.  However, the plaintiff was not at work due to emergency appendectomy surgery.  (Doc. No. 16, Ex. A).  As a result, on November 10, 2001, Mr. Haney notified the plaintiff by phone that he was being transferred to the third shift at the Middle School.  (Doc. No. 16, Ex. E, p. 51).  This information was further conveyed by correspondence to the plaintiff from Mr. Fadule.  (Doc. No. 16, Ex. G).

By correspondence dated November 13, 2001, the plaintiff requested

that he be permitted to stay at the Eldred Elementary School.  (Doc. No. 16, Ex. H).

On November 21, 2001, the plaintiff met with Mr. Fadule to discuss FMLA leave and the forms for the application.  (Doc. No. 16, Ex. F, p. 44). On that same day, the plaintiff was admitted to Pocono Hospital.  (Doc. No. 16, Ex. B, p. 18).

By letter dated December 14, 2001, the plaintiff informed Mr. Fadule that he was hospitalized for three (3) days for a heart condition.  (Doc. No. 16, Ex. I).  In that same letter, the plaintiff requested an accommodation "by assigning [him] to a day shift position in one of [the District's] elementary schools . . . that did not have a coal furnace."  (Id.).  Attached to the letter was correspondence from the plaintiff's physician which stated that the plaintiff had "multiple medical problems" and that ". . . his health would be best served by not working the nightshift at this time."  (Id.).

On December 18, 2001, Mr. Fadule advised the plaintiff that there were no day shift vacancies available and that he would inquire to see if any other custodian on any shift would be willing to change shifts with the plaintiff. (Doc. No. 16, Ex. F, pp. 42-43).  According to Mr. Fadule, no one was willing to change shifts with the plaintiff.  (Id.).

On January 2, 2002, the plaintiff returned to work on the night shift at the Middle School.  (Doc. No. 16, Ex. B, p. 18).  That same day, the plaintiff submitted the forms for his request for FMLA leave.  (Doc. No. 16, Ex. K).

On January 7, 2002, the plaintiff produced a letter from his physician indicating that he had been diagnosed with multiple medical problems, including anxiety disorder, hypertension, and atrial fibrillation, and that the plaintiff should be working on day shift. (Doc. No. 16, Ex. L).

On January 10, 2002, the Board of Education formally approved the plaintiff's request for FMLA leave for twenty-seven (27) days due to a serious health condition. (Doc. No. 16, Ex. M). This leave was to be retroactive to November 8, 2001, through December 19, 2002. (Id.). Since the plaintiff opted to use his accumulated sick days, his FMLA leave was with pay. (Id.).

The plaintiff filed a grievance requesting his original position back. However, his grievance was ultimately denied by the Board of Education. (Doc. No. 16, Ex. A. Attached Ex. B). The plaintiff was advised via the Board's disposition dated January 25, 2002, that he should "contact Mr. Fadule, Asst. Superintendent for Personnel to discuss any reasonable accommodations that can be made in his assigned shift." (Id.). The plaintiff did not contact the District until March 11, 2002. (Doc. No. 16, Ex. N). In his correspondence, the plaintiff indicated that he had not contacted Mr. Fadule to discuss reasonable accommodations on the night shift because his doctor advised that "the most reasonable accommodation would be for [him] to return to Eldred on the day shift." (Id.).

By letter dated March 12, 2002, Mr. Pullo informed the plaintiff that there were no day shift positions available and that he should "make an

appointment with Mr. Fadule to discuss any reasonable accommodations [they could] make to allow [him] to perform the essential functions of [his] job." (Doc. No. 16, Ex. O).

On March 20, 2002, the plaintiff met with Mr. Pullo and Mr. Fadule to discuss his situation. (Doc. No. 16, Ex. P, pp. 32-33; Ex. Q). At that time, the plaintiff was offered a job as a courier, which the plaintiff refused. (Doc. No. 16, Ex. B, pp. 62-63).

By correspondence directed to Mr. Pullo dated March 15, 2002, the plaintiff's attorney asserted violations by the District of the FMLA and ADA. (Doc. No. 16, Ex. R). The District's solicitor responded to the letter on March 28, 2002, denying any improper conduct by the District and indicating that "[Plaintiff] has no problem performing the tasks as a third shift custodian and therefore, the District is not obligated to make any accommodation for him at this time." (Doc. No. 16, Ex. Q. p. 3). The plaintiff's attorney responded again requesting the District to accommodate the plaintiff with a day shift position at Eldred Elementary. (Doc. No. 16, Ex. S).

On May 9, 2002, the District granted the plaintiff additional FMLA leave for thirty-three (33) days from April 22, 2002, through June 6, 2002. (Doc. No. 16, Ex. U).

Effective June 10, 2002, the District assigned the plaintiff to a day shift custodian position for the summer months until the end of August 2002. (Doc. No. 16, Ex. T).

6

By correspondence dated June 14, 2002, the plaintiff's attorney again requested reinstatement to the position formerly held by the plaintiff or reassignment to Chestnut Hill or Polk Elementary.  (Doc. No. 16, Ex. V).

By memorandum dated August 12, 2002, the District informed the plaintiff that he was reassigned to the day shift custodian position at the Pocono Valley Intermediate School, which houses grades four (4) through (6).  (Doc. No. 16, Ex. W; Ex. X; Ex. Y).  In response, the plaintiff's attorney again requested reinstatement at Eldred Elementary or transfer to the first shift at Chestnuthill or Polk Elementary.  (Doc. No. 16, Ex. Z).  This request was denied.  (Doc. No. 16, Ex. AA).


## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no

> genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  Id.  The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party."  Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted).  Material facts are those which will effect the outcome of the trial under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court may not weigh the evidence or make credibility determinations.  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).  In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party.  Id. at 393.

If the moving party meets his initial burden, the opposing party must do

more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor.  Id.

## IV. DISCUSSION

### A.  Plaintiff's ADA and PHRA Claims[2].

In Count I of his complaint, the plaintiff alleges that his medical conditions constitute a "disability" within the meaning of the ADA, and that the defendant was aware of his medical conditions. (Doc. No. 1, ¶¶ 15-16).  The plaintiff further alleges that his medical conditions substantially limit one or more of his major life activities, that he has a record of such impairment, and that the defendant regarded him as having such an impairment.  (Id. at ¶¶ 17, 21).  According to the plaintiff's complaint, he could perform the essential functions of his job with the defendant with reasonable accommodations, and that the accommodations requested by him would not have constituted any significant hardship to the defendant.  (Id. at ¶¶ 18-20).  The plaintiff alleges that the defendant refused to grant him reasonable accommodations within the meaning of the ADA, and that any attempts to accommodate him were "half-hearted" and "were merely efforts made in an attempt to insulate the Defendant from liability."  (Id. at ¶¶ 22-23).   The plaintiff claims that the

_____

[2]The analysis of the plaintiff's ADA claim applies equally to his PHRA claim.  Taylor v. Phoenixville School Dist., 184 F.3d 296, 305-06 (3d Cir. 1999)(citations omitted); Salley v. Circuit City Stores, 160 F. 3d. 997, 979 n.1 (3d. Cir. 1998).

defendant discriminated against him because of a perception that he is disabled and, as a result, he has suffered irreparable injury.  (Id. at ¶¶ 24-25).

In Count III of his complaint, the plaintiff alleges that the defendant's refusal to return him to a day shift position constituted an act of discrimination proscribed by the PHRA.  (Doc. No. 1, ¶¶ 35-40).

Under the ADA, employers are prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

In order to make out a prima facie case under the ADA, the plaintiff must establish: (1) that he is a "disabled" person within the meaning of the ADA; (2) that he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he has suffered an otherwise adverse employment decision as a result of discrimination.  Gaul v. Lucent Technologies, Inc. , 134 F.3d 576, 580 (3d Cir. 1998) (citing  Shiring v. Runyon 90 F. 3d 827, 831 (3d Cir. 1996)).

The ADA defines "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment.  42 U.S.C. § 12102(2).

The ADA has defined a "physical . . . impairment" as affecting one or

10

more, of the following systems:   "neurological, musculoskeletal, special sense organs, respiratory (including speech organs), (and) cardiovascular. . ." 29 C.F.R. § 1630.2(h)(1).

In considering whether an impairment is substantially limiting, courts consider the impairment's nature and severity, its expected duration, and its expected permanent impact.  Toyota Motor Mfg. Ky., Inc., v. Williams, 534 U.S. 184 (2002).  Impairments that interfere in only a minor way with the performance of a major life activity are precluded from qualifying as a disability under this standard. Id. at 196-97.

Under federal regulations, an activity is "substantially limited" if the plaintiff is:

> (1) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (2) Significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

Although the ADA does not define "major life activities," the EEOC has defined this term to include walking, seeing, hearing, speaking, breathing, learning and working.  See 29 C.F.R. § 1630.2(i).

The determination as to whether an activity is substantially limited is

11

made on a case by case basis.  Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999).  Moreover, in order for the court to make a determination that the plaintiff was substantially limited in a major life activity, one must be regarded as precluded from more than one particular job.  Murphy v. United Parcel Service, Inc., 527 U.S. 516, 523 (1999).  In other words, the plaintiff's medical conditions must significantly restrict his ability to "to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."   29 C.F.R. § 1630.2(j)(3)(i).

In this case, the record establishes that the plaintiff has been diagnosed with various medical conditions, including an anxiety disorder, hypertension, and atrial fibrillation.   (Doc. No. 16, Ex. L).   There is no evidence, however, that the plaintiff's conditions substantially limit a major life activity.  In fact, the plaintiff testified at his deposition as follows:

> Q. Paragraph 17 of your complaint you state that you suffer from a medical condition that substantially limited one or more of your major life activities, correct?
>
> A. Um-hum.
>
> Q.  What major life activities were interfered with or limited by your medical condition?
>
> A.   Well, mentally, I'm more depressed, more anxious since this happened to me in 2001.
>
> Q.  Since what happened to you?

A.  Since I was changed from Eldred to night shift and PVI.  And healthwise having atrial fibrillation is not a good thing.

Q.  What activities of yours have been limited as a result of your health condition?

A.  Just enjoying myself.

Q.  Enjoying yourself?

A.  Yes.  I'm depressed.

Q.  Other than enjoying yourself are there any other life activities that have been substantially limited by your medical condition?

A.  I get tired very easily.  It has to do with the medicine and my memory is kind of like messed up from the memory medicine.

Q.  From the medicine?

A.  Yes.

Q.  Anything else?

A.  Not that I can think of.

(Doc. No. 16, Ex. B, pp. 41-42).

As argued by the defendant, the fact that the plaintiff no longer "enjoy[s] himself" is not a major life activity which falls under the scope of the ADA. See 29 C.F.R. § 1630.2(I).   Moreover, although the side effects of medication can be considered in determining whether an individual falls under the ADA's definition of disability, the plaintiff has not established that he is substantially limited in a major life activity because of the side effects

13

of his medication.

To the extent that the plaintiff asserts that he is limited in the major life activity of working, as set forth above, one must be regarded as precluded from more than one particular job.  Murphy v. United Parcel Service, Inc., supra.  Here, the plaintiff alleges that he can only work at the elementary school on the day shift, and is precluded from working at the middle school on the night shift.  Because the plaintiff's medical conditions must significantly restrict his ability to "to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities," 29 C.F.R. § 1630.2(j)(3)(i), the plaintiff's claims are insufficient.

In addition, although the plaintiff alleges that he "had a record of said medical conditions, as evidence by his request that he take time off from work in order to have emergency medical surgery, and, because he subsequently had to take additional time off from work due to other serious health problems," (Doc. No. 16, Ex. A, ¶ 21), there is no evidence in the record that the plaintiff meets the definition of having a "record of impairment."

In order to have a "record of impairment" under the ADA, the plaintiff must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity.  42 U.S.C. § 12102(2)(B); 29 C.F.R. § 1630.2(k).  "This part of the definition is satisfied if a record relied upon by

14

an employer indicates that the individual has or has had a substantially limiting impairment.  The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities."   29  C.F.R.app. §  1630.2(k).   Where  the  record  does  not demonstrate a substantial limitation in major life activities, summary judgment in favor of the employer is appropriate.  Howell v. Sam's Club No. 8160/Wal-Mart, 959 F.Supp. 260, 268 (E.D.Pa. 1997).

Here, the Regulations provide that temporary, non-chronic impairments of short duration, such as the plaintiff's appendicitis, are not usually regarded as disabilities.  29 C.F.R. § 1630.2(j) app.  Moreover, as discussed above, the plaintiff has not demonstrated that his other conditions, (i.e., anxiety disorder and atrial fibrillation), substantially limit any major life activities. Therefore, the plaintiff cannot be regarded as having a record of impairment under the ADA.

Finally, with respect to whether the plaintiff meets the definition of "disability" under the ADA, the plaintiff alleges in his complaint that the defendant regarded him as having a medical condition which substantially limited one or more of his major life activities.  (Doc. No. 16, Ex. A, ¶ 17).

In order to establish that he was "regarded as" having a disability, the plaintiff must establish that: (1) he has a physical disability that does not substantially limit major life activities but was treated by the defendant as having such an impairment; or (2) he has a physical impairment that

15

substantially limits major life activities only as the result of the attitudes of others toward such impairment; or (3) he has no impairment at all but was nonetheless treated by the defendant as having a substantially limiting impairment.  Grabosky v. Tammac Corp., 127 F.Supp.2d 610, 616 (M.D.Pa. 2000).

Here, the evidence establishes that the defendant was aware that the plaintiff had various medical conditions.  Generally speaking, however, the mere fact that an employer is aware of an employees impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action. See e.g. Salley v. Circuit City Stores, Inc.  160 F. 3d, at 981 (3d  Cir. 1998). In fact, the evidence in this case establishes that the defendant continued to assign the plaintiff to custodial positions which had the same requirements as his original custodial position, indicating that the defendant was of the opinion that the plaintiff could perform the essential functions of his job and was not substantially limited in any major life activities.

Based upon the foregoing, the plaintiff has failed to established that he has a "disability" as defined under the ADA, and the defendant is entitled to judgment as a matter of law on the plaintiff's ADA and PHRA claims.[3]

_____

[3]The undersigned finds this issue dispositive of the plaintiff's ADA and PHRA claims.  However, it is noted that the court has reviewed the remainder of the defendant's arguments relating to the plaintiff's ADA and PHRA claims and also finds them to be well-taken.

## B.  Plaintiff's FMLA Claims

In  Count  II  of  his  complaint,  the  plaintiff  alleges  that  the  defendant retaliated against him for taking time off work which was time that would have qualified  under  the  FMLA.  (Doc.  No.  1,  ¶  30).   To  this  extent,  the  plaintiff alleges that the defendant violated the FMLA by refusing to restore him to the position  he  held  prior  to  taking  FMLA  for  surgery,  and  by  attempting  to approve his FMLA leave retroactively.  (Id. at ¶¶ 31-32).

### 1.  Plaintiff's Claim of Retaliation Under the FMLA

Title 29 U.S.C. §§ 2612(a) provides, in relevant part, that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month  period  .  .  .  because  of  a  serious  health  condition  that  makes  the employee unable to perform the functions of [his] [position]."

Moreover, 29 U.S.C. § 2614(a)(1) provides:

> [A]ny  eligible  employee  who  takes  leave  under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave--
>
> (A) to be restored by the employer to the position of employment  held  by  the  employee  when  the  leave commenced; or
>
> (B)  to  be  restored  to  an  equivalent  position  with equivalent  employment  benefits,  pay,  and  other terms and conditions of employment.

An equivalent position is "one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including

17

privileges, perquisites and status.  It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority."  29 C.F.R. § 825.215(a).  Further, the employee "must be reinstated to the same or a geographically proximate worksite (i.e., one that does not involve a significant increase in commuting time or distance) from where the employee had previously been employed."  29 C.F.R. § 825.215(e)(1).  "The employee is ordinarily entitled to return to the same shift or the same or an equivalent work schedule."  29 C.F.R. § 825.215(e)(2).

The FMLA allows the employer to deny reinstatement, however, where the employee would have lost his job during the leave period even if he had been working. Parker v. Hahnemann University Hospital, 234 F.Supp.2d 478, 485-86 (D.N.J. 2002)(citing 29 U.S.C. § 2614 (a)(3)).  An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.  29 C.F.R. § 825, 216(a).  The employer must be able to show than an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.  Id. Where a position on a shift has simply been filled by another employee, the employee returning from FMLA leave is entitled to return to the same shift on which he/she was employed before taking the leave.  Id.  If a shift has been eliminated, however, an employee would not

18

be entitled to return to work that shift.  29 C.F.R. § 825.216(a)(2).

In this case, there is no dispute that the plaintiff was not placed in his original position upon returning from FMLA leave.  The record establishes, however, that the plaintiff was not entitled to return to that position, as the position had been eliminated in order to create a new head custodian position.  The record further establishes that the vacancy for the new head custodian position was posted in August 2001 and expired in September 2001, prior to the plaintiff taking FMLA leave, but that the plaintiff did not apply.  Interviews were conducted for the position in September and October 2001, with a selection for the position being made in October 2001.  Since the plaintiff's position ceased to exist at that time, he was not entitled to return to work in that position and the defendant was justified in placing the plaintiff in the only available custodian position on the third shift at the Intermediate School.   Therefore, the defendant is entitled to summary judgment on this claim.

## 2.  Retroactive Designation of FMLA Leave

To the extent that the plaintiff argues that the District improperly retroactively designated his leave as FMLA leave, the FMLA does not impose any specific requirements for the type or timing of notification an employer must provide to an employee when designating FMLA leave. However, the Labor Department has issued more particular notice

requirements, notably 29 C.F.R. § 825.208, which provides that "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section."   29 C.F.R. § 825.208(a).   "If the employer has the requisite knowledge to make a determination that the paid leave is for an FMLA reason at the time the employee . . . gives notice of the need for leave . . . the employer may not designate leave as FMLA leave retroactively, and may designate only prospectively as of the date of notification to the employee of the designation."   29 C.F.R. § 825.208(c). Thus, if an employer fails to properly notify an employee that she is using her FMLA leave, "none of the absence preceding the notice to the employee of the designation may be counted against the employee's 12-week FMLA leave entitlement."   Id.

Courts have split on whether the notice requirements of § 825.208 are valid or in contravention of the FMLA statutory language.   See, e.g., McGregor v. Autozone, Inc., 180 F.3d 1305, 1308 (11th Cir.1999) (not enforcing § 825.208); Plant v. Morton Int'l, Inc., 212 F.3d 929, 935 (6th Cir.2000) (upholding enforcement of § 825.208); Nolan v. Hypercom Manufacturing Resources, 2001 WL 378235 (D.Ariz. 2001) (Broomfield, J.) (holding § 825.208 not enforceable).

In Ragsdale v. Wolverine World Wide, Inc., 122 S.Ct. 1155 (2002), the Supreme Court described the "FMLA's most fundamental substantive

20

guarantee" as "the employee's entitlement to a total of 12 workweeks of leave during any 12-month period."   Ragsdale, 122 S.Ct. at 1163-64 (citations omitted).   In that case, the Court struck down a Labor Department regulation, 29 C.F.R. § 825.700(a), which mandated that, "If an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement."   The result of § 825.700(a) was that employers were categorically required to give an employee an additional 12 weeks of FMLA leave if the employer failed to comply with the notice regulations.   This categorical penalty for a notice violation "subvert[ed] the careful balance [between employers' and employees' interests], for it gives certain employees a right to more than the 12 weeks of FMLA-compliant leave in a given 1-year period."   Ragsdale, 122 S.Ct. at 1164.   The Court noted that the effect of § 825.700(a) was to penalize employers who give more generous benefits than the FMLA requires, because only generous employers risk the burden of an additional 12 weeks if they improperly designate FMLA time during their own longer leave policies.   Id. at 1164-65.

In striking down the categorical regulation, the Supreme Court left open the possibility that employees could recover for notice violations on a "case-by-case" basis.   Ragsdale, 122 S.Ct. at 1162.   The Court indicated that actual harm to an employee was necessary to state a claim for violations of the notice provision, disapproving of a "penalty [ ] unconnected to any

prejudice the employee might have suffered from the employer's lapse." Id. at 1161. The Court clarified:

> The purpose of the cause of action is to permit a court to inquire into matters such as whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions.

Id. at 1162[4].

Following Ragsdale, at least one District Court has held that a plaintiff must show detrimental reliance and prejudice to prevail on a notice violation under the FMLA. In Summers v. Middleton & Reutlinger, P.S.C., 214 F.Supp.2d 751 (W.D.Ky.2002), the plaintiff sued the defendant for retroactively designating her leave as FMLA leave. The Court granted the defendant summary judgment based on Ragsdale, holding that the plaintiff could not show prejudicial effect from the employer's violations of the notice provision. The Court held that the "plaintiff cannot merely rely on the fact that defendant designated her FMLA leave retrospectively, she must

---

[4]Ragsdale gave many more indications that the employee must show prejudice to prevail on a claim of a notice violation under the FMLA, noting that "§ 2617 provides no relief unless the employee has been prejudiced by the violation . . . The remedy is tailored to the harm suffered." 122 S.Ct. at 1161. Further, § 825.700(a) was "invalid because it . . . relieves employees of the burden of proving any real impairment of their rights and resulting prejudice . . . By mandating [relief] absent a showing of consequential harm, the regulation worked an end run around important limitations of the statute's remedial scheme." 122 S.Ct. at 1162.

demonstrate that her rights under the FMLA were violated and she was harmed as a result." Id. at 757.

In this case, the plaintiff has failed to establish how he was prejudiced by the defendant's retroactive designation of his leave as FMLA leave.  In fact, the record reveals that the plaintiff met with Mr. Fadule in November 2001 to discuss taking FMLA leave.  At that time, the plaintiff obtained the FMLA leave application, but did not sign and submit the application until January 2, 2002.  On the application, the plaintiff requested that the effective date of his leave be November 8, 2001, with an estimated return to service date being December 20, 2001.  The Board of Education approved the plaintiff's application eight (8) days after it was submitted noting that the plaintiff's first FMLA "running year" would be from November 8, 2001, through November 8, 2002.  Subsequently, prior to the expiration of his first running year, the plaintiff requested an additional thirty-three (33) days of FMLA leave, which again, as per the plaintiff' request, was granted retroactive from April 22, 2002, through June 6, 2002.  Considering that the plaintiff was granted exactly what he requested, it is difficult to see how the plaintiff was prejudiced by the defendant's retroactive designation of his leave as FMLA leave.  Therefore, the defendant is entitled to summary judgment on this claim[5].

---

[5]As the defendant notes, to the extent that the plaintiff would argue that his leave should not have been designated as FMLA leave, he would not be

**C.  Plaintiff's Retaliation Claim**

In Count IV of the plaintiff's complaint, the plaintiff alleges a general claim of retaliation for his asserting his rights under the ADA and FMLA. Specifically, the plaintiff alleges that the defendant "ratcheted up pressure on [him]" and made unreasonable demands of him.

In order to set forth a claim for retaliation under the ADA, PHRA and FMLA, the plaintiff must show that: (1) he engaged in protected activity; (2) he suffered adverse action by the employer either after or contemporaneous with the protected activity; and (3) a causal connection exists between the protected activity and the adverse action.  Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000).

An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Ogden v. Keystone Residence, 226 F.Supp.2d 588 (M.D.Pa. 2002).  An action qualifies as an adverse employment action if it impairs the plaintiff in present or future employment actions.  Miller v. Cohen, 52 F.Supp.2d 389 (M.D.Pa. 1998).  General allegations of being treated differently or more harshly do not qualify as adverse employment actions.  Id.

---

covered by those provisions of the FMLA which require an employer to return an employee to an equivalent position upon returning from FMLA leave, and the plaintiff's proceeding claim would lack all merit.

In this case, the plaintiff has failed to sufficiently allege that he suffered any significant change in employment status so as to demonstrate an adverse employment action.   In fact, the plaintiff alleges only that the defendant has "ratcheted up pressure" on him and made unreasonable demands of him.   Such general allegations are insufficient to show adverse employment action in retaliation for asserting rights under the ADA, PHRA, or FMLA.   As such, the defendants are also entitled to summary judgment on the plaintiff's retaliation claim.

## V.  CONCLUSION

Based upon the foregoing,

**IT IS RECOMMENDED THAT:**

the defendant's motion for summary judgment, **(Doc. No. 13)**, be **GRANTED** in its entirety.

<u>s/ Malachy E. Mannion</u>
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:  JULY 28, 2004**