**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DUANE HUBBARD,** | : |
| **Plaintiff** | : |
| | : |
| **vs.** | : CIVIL ACTION NO. 3:CV-03-0797 |
| | : (CHIEF JUDGE VANASKIE) |
| **PLEASANT VALLEY SCHOOL** | : (MAGISTRATE JUDGE MANNION) |
| **DISTRICT,** | : |
| **Defendant** | : |

<u>MEMORANDUM AND ORDER</u>

**January 6, 2006**

Plaintiff Duane Hubbard, a custodian for Defendant Pleasant Valley School District ("District"), brought this employment discrimination action after his day shift position at the Eldred Elementary School was eliminated and he was assigned a third shift position at another school while he was on a leave of absence attributable to an emergency appendectomy.  On July 28, 2004, United States Magistrate Judge Malachy E. Mannion issued a Report and Recommendation ("R&R"), proposing that Defendant's Motion for Summary Judgment (Dkt. Entry 13) be granted.  (Dkt. Entry 23.)  Magistrate Judge Mannion found that the record established, as a matter of law, that Hubbard was not significantly limited in any major life activity as a result of his medical conditions, specifically, anxiety disorder, hypertension and atrial fibrillation; that he did not have a record of a substantially limiting impairment; and that he was not perceived to be disabled by the District.  Thus, Plaintiff, as a matter of law, did not fall within the protection of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, <u>et</u> <u>seq</u>.,

and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951, et seq..

Furthermore, Magistrate Judge Mannion ruled that the District did not violate the Family

Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et seq., in refusing to restore Plaintiff to

the position he held prior to his FMLA leave and for attempting to approve his FMLA leave

retroactively.  Finally, Magistrate Judge Mannion denied Plaintiff's claims of retaliation under

the ADA, PHRA, and the FMLA.

On September 2, 2004, Plaintiff filed objections to the R&R, asserting that a jury

question existed as to whether Plaintiff was in fact substantially limited in the major life activities

of working, concentrating, and interacting with others, and whether the District regarded Plaintiff

as disabled.  (Brief in Supp. of Obj. to R&R, Dkt. Entry 27, at 3-5.)  In addition to his objections

with respect to his ADA claim, Plaintiff contested the question of whether the District had

eliminated his day shift position at the Eldred Elementary School, argued for greater

consideration of the seniority system to enable him to exercise "bumping" rights, and

maintained that he should have been returned to his position at Eldred following his FMLA

leave.  (Id., at 5-7.)  Hubbard did not object to those parts of the R&R that recommended

granting summary judgment on the claims that concerned retroactive designation of FMLA

leave and unlawful retaliation for the exercise of rights protected by the ADA, PHRA and FMLA.

The objections have been fully briefed and the matter is ripe for disposition.

As recently explained by my esteemed colleague, the Hon. A. Richard Caputo:

2

Where objections to the magistrate judge's report are filed, the Court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks,* 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(C)), provided the objections are both timely and specific, *Goney v. Clark,* 749 F.2d 5, 6-7 (3d Cir. 1984). In making its *de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard,* 829 F.Supp. 736, 738 (M.D. Pa.1993). Although the review is *de novo,* the statute permits the Court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz,* 447 U.S. 667, 675-76 (1980); *Goney,* 749 F.2d at 7; *Ball v. United States Parole Comm'n,* 849 F.Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn,* 474 U.S. 140, 154 (1985); *Goney,* 749 F.2d at 7. At the very least, the Court should review uncontested portions for clear error or manifest injustice. *See, e .g., Cruz v. Chater,* 990 F.Supp. 375, 376-77 (M.D. Pa. 1998).

Sang Li v. Apker, No. Civ. A. 3:05-CV-0279, 2005 WL 3336518, at *2 (M.D. Pa. Dec. 8, 2005).

No manifest injustice or clear error has been discerned with respect to the Magistrate Judge's determination that Plaintiff is not entitled to recover on a retaliation theory or with respect to the contention that the District violated the FMLA in retroactively designating as covered by the FMLA the period of absence for the emergency appendectomy. Accordingly, those claims will not be discussed further. Plenary consideration, however, will be given to the ADA, PHRA and FMLA claims to which Plaintiff's objections relate.[1]

Magistrate Judge Mannion's Report and Recommendation includes a comprehensive

---

[1] The filing of objections to the Report and Recommendation requires de novo review of those parts of the record to which the objections relate. See 28 U.S.C. § 636(b)(1).

3

recitation of the evidence of record, and there is thus no need to detail the evidence here. It is noteworthy, however, that Plaintiff did not contest the accuracy of the averments presented in the District's Local Rule 56.1 Statement of Material Facts. Those factual assertions, therefore, are accepted as true. Among the facts admitted by Plaintiff are:

- Several months before Plaintiff was required to undergo an emergency appendectomy, the District posted a vacancy for the newly-created position of Head Custodian at the Polk and Eldred Elementary Schools.

- Plaintiff did not apply for the head custodian position.

- Once the head custodian position for Eldred and Polk Elementary Schools was established, Plaintiff's day shift custodian position at Eldred ceased to exist because that position would be occupied by the person selected for the head custodian position.

- Once the person was selected for the head custodian position, the only position available for a transfer for Plaintiff was on the third shift at the District's Middle School.

- On November 10, 2001, three days after undergoing an emergency appendectomy and before he requested that his leave of absence be treated as covered by the FMLA, Plaintiff was informed of his transfer.

- Plaintiff did not contact the District to discuss reasonable accommodations until March

4

11, 2002, nearly five months after being informed of the transfer in position.[2]

● Plaintiff was assigned a day shift custodian position effective June 10, 2002 for the summer months, but not at the Eldred Elementary School.

● On August 12, 2002, the District informed Plaintiff that he was reassigned to the day shift custodian position at the Polk Valley Intermediate School, which houses grades 4 through 6.[3]

A.    **Absence of Evidence of a "Disability"**

The ADA defines the term "disability" as:

>   (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
>   (B) a record of such an impairment; or
>
>   (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).  The phrase "major life activities" encompasses "functions such as caring

---

[2] Significantly, in a letter dated November 13, 2001, Plaintiff requested reconsideration of the transfer decision on the basis of his longevity with the District and the impact the shift change may have on his "lifestyle."  (Ex. 2 to Hubbard Dep.)  Thus, he noted that "[b]abysitting our grandson, and some evening charity work that I perform, are just a few of the valuable activities that I will have to give up."  (Id.)  He did not express any concerns that the transfer would adversely affect his physical or mental health, and did not request any type of accommodation based on a physical or mental health impairment.

[3] Plaintiff, through his counsel, accepted the transfer to the day shift position at the intermediate school, but persisted in requesting that he be assigned to the day shift at an elementary school.    (Letter from Atty. Russo to Atty. Corveleyn, Aug. 27, 2002, Dkt. Entry 16, Ex. Z.)

for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning,

and working."  29 C.F.R. § 1630.2(i).  Regulations define the concept of "substantially limits" as:

> (i) Unable to perform a major life activity that the average person in
> the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration
> under which an individual can perform a particular major life activity
> as compared to the condition, manner, or duration under which the
> average person in the general population can perform that same
> major life activity.

29 C.F.R. § 1630.2(j)(1).  In determining whether a person satisfies the ADA definition of

"disability," a court is to consider a number of factors, including:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent
> or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).  The impact of a physical or mental impairment is to be assessed in its

mitigated, rather than untreated state.  See Sutton v. United Airlines, Inc., 527 U.S. 471, 482

(1999); Murphy v. U.P.S., Inc., 527 U.S. 516, 521 (1999).

Whether a particular condition substantially limits a major life activity must be assessed

"on a case-by-case basis."  Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999).  "To

make that individualized assessment, [a court] must begin by identifying the specific life activity

or life activities that [the plaintiff] says her disorder affected and then evaluate whether her

6

condition 'substantially limits' those life activities." <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296, 306-07 (3d Cir. 1999).

In his objections to the R&R, Plaintiff asserts that the "major life activities" of working, concentrating, and interacting with others are substantially affected by his impairments.  The District contends that Plaintiff failed to argue to the Magistrate Judge that he was substantially limited in the major life activities of concentrating and interacting with others, and that, as a result, he has waived consideration of those bases for finding a disability.

"Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996).  <u>Accord</u>, <u>Ward v. United States</u>, 208 F.3d 216, 2000 WL 282648, at *1 (6th Cir. 2000) (table); <u>Harrington v. Wilber</u>, 384 F. Supp. 2d 1321, 1324-25 (S.D. Iowa 2005).  As explained in <u>Reich v. Hercules, Inc.</u>, 857 F. Supp. 367, 369 (D. N.J. 1994), "[a]lthough this Court must review the Report and Recommendation <u>de novo</u>, [a party] is not entitled as of right to present arguments to this Court which were not seasonably presented to the Magistrate [Judge]."  Indeed, "[s]ystemic efficiencies would be frustrated and the Magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round." <u>Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.</u>, 840 F.2d 985, 991 (1st Cir. 1988).

Although it is arguable that Hubbard did argue to the Magistrate Judge that he was

7

substantially limited in the ability to concentrate as a result of medication he was taking, there is

nothing in the record to suggest that he had asserted difficulty in interacting with others.

Accordingly, on this ground alone, the contention that he was substantially limited in the ability

to interact with others could be rejected as waived.

In any event, both contentions lack sufficient evidentiary support.  At his deposition,

Plaintiff testified that "my memory is kind of like messed up from the memory medicine."

(Hubbard Dep., Ex. B, Dkt. Entry, 16, at 42.)  Plaintiff's deposition testimony provides no basis

for a conclusion that his ability to concentrate was "substantially limited."

"The activity of interacting with others is substantially limited only where an individual's

relations are 'characterized on a regular basis by severe problems such as high levels of

hostility, social withdrawal, or failure to communicate when necessary.'" Bennett v. Unisys

Corp., No. 2:99CV0446, 2000 WL 33126583, at *5 (E.D. Pa. Dec. 11, 2000), quoting, Olson v.

Dubuque Cmty. Sch. Dist., 137 F.3d 609, 612 (8th Cir.1998).  No evidence suggesting such an

impairment has been presented by Plaintiff here.

Accordingly, Plaintiff cannot survive summary judgment with respect to the allegedly

impacted major life activities of concentration or interacting with others.  The only other major

life activity advanced by Plaintiff is working, and plenary consideration will be given to the

question of whether the evidence suffices to defeat summary judgment.

When the alleged major life activity at issue is working, the plaintiff must demonstrate

8

more than the inability to perform a particular job.  See 29 C.F.R. § 1630.2(j)(3)(i).  Rather, the

plaintiff must prove that he is significantly limited in his ability to "perform either a class of jobs

or a broad range of jobs in various classes as compared to the average person having

comparable training, skills and abilities."  Id.  While Plaintiff in this case contends that he is not

capable of working the middle school night shift, he does state that he can work the elementary

school day shift.  (Letter from Plaintiff to Mr. Anthony Fadule, Dec. 14, 2001, Dkt. Entry 16, Ex.

I.)  In fact, it appears that at least as of the date of his deposition, December 12, 2003, Hubbard

remained employed as a custodian for the District, working at an intermediate school on the

day shift.  Therefore, as the Magistrate Judge observed, Plaintiff cannot be considered as being

restricted from performing a "class of jobs."  Stated otherwise, there is no evidence to support a

determination that Plaintiff is "substantially limited" in the ability to work.  See Tice v. Centre

Area Transp. Authority, 247 F.3d 506, 512-13 (3d Cir. 2001) (affirming summary judgment in

favor of employer where plaintiff's claim of substantial impairment in the major life activity of

working was belied by his employment in another field and by plaintiff's failure to specify jobs,

other than his prior occupation of bus driver, that he could not perform).

Plaintiff nonetheless asserts that his absences from work due to extended FMLA leaves

indicate that he was substantially limited in the major life activity of working.  (Brief in Supp. of

Obj. to R&R, Dkt. Entry 27, at 3.)  Plaintiff did not present this ground to the Magistrate Judge.

As noted above, Plaintiff's failure to raise the matter before the Magistrate Judge would warrant

9

summary rejection of it now.  In any event, the assertion is not sufficient to defeat summary judgment.  First, qualification for FMLA leave alone does not necessarily signify disability under the terms of the ADA.  Thus, for example, the leave Plaintiff took in November and December of 2001 for an emergency appendectomy would not suggest the existence of a "disability."  See Ogbom v. United Food and Commercial Workers Union Local No. 881, 305 F.3d 763, 767 (7th Cir. 2002) ("[I]ntermittent impairments such as broken limbs and appendicitis are not disabilities.").  The reason for taking leave from April 22, 2002 through June 6, 2002 does not appear in the record, but what is significant is the absence of any FMLA or other leave after that time.  Under these circumstances, no rational jury could find Plaintiff substantially limited in the major life activity of working based on the two periods of FMLA leave.  Accordingly, plenary consideration of the question of whether Plaintiff is disabled within the ambit of the ADA and PHRA yields the same conclusion reached by Magistrate Judge Mannion: the District is entitled to summary judgment on this issue.

Plaintiff also objects to the Magistrate Judge's finding that there is insufficient evidence that the District perceived him to be disabled to warrant a jury trial on this aspect of the definition of "disability."  (Brief in Supp. of Obj. to R&R, Dkt. Entry 27, at 5.)  Other than his testimony that the District asked him to reveal his medications and questioned his osteopath's credentials, however, Plaintiff has not pointed to any evidence suggesting that the District regarded him as disabled.  As Magistrate Judge Mannion pointed out, knowledge of a condition

10

that is capable of rendering one disabled is not tantamount to regarding a particular plaintiff as disabled.  (R&R, Dkt. Entry 23, at 16.)

The applicable regulations provide that being "regarded as having such [a disabling] impairment" means:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has none of the impairments defined in paragraphs (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l).

No evidence has been presented to meet any of these criteria.  The fact that the District offered Plaintiff full-time custodial positions upon his return from his two FMLA leaves of absence, including the night shift at Pocono Valley Middle School and the day shift at the Pocono Valley Intermediate School, belies any assertion that the District regarded his medical condition as substantially limiting him in some major life activity.  Under these circumstances, summary judgment in the District's favor on the question of whether Plaintiff was regarded as having a disability is clearly appropriate.  See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002).

11

Accordingly, as Magistrate Judge Mannion recommended, the District is entitled to judgment in its favor on the ADA and PHRA claims.  The evidence in this case does not permit a determination that Plaintiff's medical condition was of such severity and duration as to substantially limit him in any major life activity.  Furthermore, there is no evidence at all that the District regarded him as having an impairment that substantially limited a major life activity.

**B.**   **Absence of Evidence to Support the FMLA Reinstatement Claim**

Plaintiff asserts three objections to the Magistrate Judge's recommendation that there is insufficient evidence to defeat summary judgment on the claim that the District was required to reinstate him to the Eldred day shift position upon the expiration of his first FMLA leave.  First, he claims that the person appointed to the head custodian post could have been placed at the Polk Elementary School.

Plaintiff was replaced at Eldred by Howard Scott, who assumed the head custodian position that covered both Polk and Eldred Elementary Schools.  Plaintiff contends, however, that Scott could have been placed at Polk, rather than Eldred.  Plaintiff asserts that this fact "vitiates the argument that Plaintiff's position was 'eliminated.'"  (Brief in Supp. of Obj. to R&R, Dkt. Entry 27, at 6.)  Significantly, Plaintiff does not cite any evidence to support his assertion. In this regard, he acknowledged that there was another custodian on the Polk day shift. (Hubbard Dep. at 31.)  The establishment of the new position thus required elimination of one of the day shift posts.  Furthermore, this argument ignores Plaintiff's admissions that "[o]nce the

head custodian position for Eldred and Polk was established, Plaintiff's day custodian position at Eldred ceased to exist," and that "[t]he only position available for a transfer for Plaintiff was Howard Scott's position, which was third shift at the Middle School."  (Def's Statement of Material Facts, Dkt. Entry 16, at ¶¶ 6and 9.)  The FMLA does not entitle an employee to reinstatement if that employee's position would have been eliminated during the FMLA leave period had he been working.  29 U.S.C. § 2614(a)(3); Throneberry v. McGehee Desha County Hospital, 403 F.3d 972, 977 (8th Cir. 2005).  In light of Plaintiff's concessions, there is no basis for a claim of reinstatement to the Eldred day shift position following the FMLA leave.  Plaintiff would have lost that position even if he had not taken leave, and the District incurred no liability under the FMLA in not returning Plaintiff to the Eldred day shift.  See Combites v. SimonDelivers, Inc., No. 04-4571, 2005 WL 3054597, at *4-5 (D. Minn. Nov. 14, 2005) (summary judgment granted in favor of employer where evidence showed that plaintiff would have been fired even if he had not taken FMLA leave); Gorman v. Sewerage and Water Bd. of New Orleans, No. Civ. A. 03-3624, 2005 WL 2050286, at *8 (E.D. La. Aug. 17, 2005) (same).

Plaintiff's second objection is that his twenty-three years of seniority afforded him "bumping" rights that should have enabled him to pursue a position of his choice by taking the place of another employee.  (Brief in Supp. of Obj. to R&R, Dkt. Entry 27, at 6.)  This contention was not presented to the Magistrate Judge, and thus need not be considered now.  See Paterson-Leitch, 840 F.2d at 991 ("[I]t would be fundamentally unfair to permit a litigant to set

13

its case in motion before the magistrate, wait to see which way the wind was blowing, and –

having received an unfavorable recommendation – shift gears before the district judge.").

Furthermore, Plaintiff does not offer any competent evidence on this matter, such as provisions

of a collective bargaining agreement, that would arguably cover the scenario presented here.

In this regard, the District had informed Plaintiff's lawyer that neither the collective bargaining

agreement between the District and the Pleasant Valley Educational Support Personnel

Association nor the District's policy "provides for transfers of personnel between positions

because of 'bumping rights' or seniority."  (Letter from District's Counsel to Plaintiff's Counsel,

Sept. 23, 2002, Dkt. Entry 16, Ex. AA.) Under these circumstances, this objection must fail.

      Plaintiff 's final objection is that he had a right to reinstatement to the Eldred day shift

under 29 C.F.R. § 825.216(a)(2), which provides:

> If a shift has been eliminated, or overtime has been decreased, an employee
> would not be entitled to return to work that shift or the original overtime hours
> upon restoration. However, if a position on, for example, a night shift has been
> filled by another employee, the employee is entitled to return to the same shift on
> which employed before taking FMLA leave.

Plaintiff relies on the fact that Howard Scott assumed the day shift post at Eldred.  But Scott did

not fill a vacancy created by a leave of absence.  He assumed an entirely new post that was

established months before Plaintiff took leave and for which Plaintiff did not apply.  Thus, the

second sentence of  § 825.216(a)(2) has no application here.  On the contrary, Hubbard falls

within the first sentence – his shift was eliminated – and the District was not obligated to have

14

him work the first shift at Eldred.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1. The Report and Recommendation of Magistrate Judge Mannion is **ADOPTED.**

2. Defendant's Motion for Summary Judgment (Dkt. Entry 13) is **GRANTED.**

3. The Clerk of Court is directed to enter judgment in favor of Defendant and against Plaintiff.

4. The Clerk of Court is further directed to mark this matter **CLOSED.**

<u>s/ Thomas I. Vanaskie</u>
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania